OFFICE OF DISCIPLINARY COUNSEL on Behalf of the BOARD OF PROFESSIONAL RESPONSIBILITY OF the SUPREME COURT of Tennessee, Appellant,

v.

Jack H. DAVIS, et al., Appellee.

Supreme Court of Tennessee,
at Nashville.

Aug. 26, 1985.

William W. Hunt, III, Disciplinary Counsel, Nashville, for appellant.

R. Kreis White, David Rutherford, Nashville, for appellee.

## OPINION

DROWOTA, Justice.

This is an appeal by Disciplinary Counsel from a judgment of the trial court that Appellee, Jack Davis, need not take the bar examination as a condition for reinstatement of his law license following disbarment. Disciplinary Counsel argues that Mr. Davis has not shown that he possesses the "competence and learning in law required for admission to practice law in this State...." Rule 9, Section 19.3, Rules of the Supreme Court. Disciplinary Counsel takes the position that reinstatement of Mr. Davis' law license should be conditioned upon his successful completion of the Tennessee Bar Examination. Rule 9, Section 19.7.

The record reflects that disbarment proceedings were brought against the Appellee by the Nashville Bar Association prior to the adoption of Rule 9 of this Court. On August 31, 1973, the Chancellor found Mr. Davis guilty of: failing to prosecute two separate actions for divorce; furnishing to his clients copies of orders known to be forged, false, and void, and purporting to be orders granting his clients a divorce; failing to prosecute a negligence claim and allowing the statute of limitations to run; misrepresenting facts to his client and to the Grievance Committee of the Nashville Bar Association; and representing to a

client that criminal charges against him had been dismissed, knowing such representation to be false and failing to take the proper steps to represent his client. The Chancellor found the foregoing matters "to be serious offenses, and to be acts of unprofessional conduct, dishonesty, malpractice, and conduct which render him unfit to be a member of the Bar." The Appellee was disbarred and his license to practice law suspended for ten years, with leave to seek reinstatement after five years.

On August 13, 1981, the Appellee applied for reinstatement by filing a petition with the Board and service upon Disciplinary Counsel.[1] The Board referred the petition to a hearing committee, which heard proof on February 9, 1982.

At the reinstatement hearing, Mr. Davis testified that in 1971 he was employed by the Department of Human Services. He was asked to leave in February of 1973. He returned to work for the Department of Human Services in September of 1976. Mr. Davis received several promotions within the Department and presently holds the position of Assistant Director for Services for the Blind. In this capacity, he serves as director of the Tennessee Business Enterprises program. Mr. Davis himself is blind.

Mr. Davis stated that he started taking amphetamines in early 1968 and after a year and a half "I started making irrational decisions and bad judgment. And exhibiting, in my judgment, what most people would consider reprehensible behavior." He stated that in the early part of 1972, people began to realize that he "wasn't dependable ... wasn't reliable. And as a consequence, they began to ask questions and register complaints." He contended that drugs were his downfall and that he has been off drugs since 1974.

At the hearing friends, neighbors and business associates described Mr. Davis as dependable, reliable, extremely capable, patient, fair, honest and trustworthy. One witness described him as "a sober, hardworking, dedicated man ... A man of integrity" who had "straightened himself up."

At this reinstatement hearing the Petitioner had "the burden of demonstrating by clear and convincing evidence that he has the moral qualifications, competency and learning in law required for admission to practice law in this State and that his resumption of the practice of law within the State will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive to the public interest." Rule 9, Section 19.3.

The evidence before the Hearing Committee was clear and convincing that Mr. Davis has the moral qualifications to practice law. In closing argument before the Hearing Committee and before this Court, Disciplinary Counsel did not question Mr. Davis' moral qualifications. It was Disciplinary Counsel's position that the sole issue was one of competency and learning in the law, by virtue of the length of Mr. Davis' absence from the practice of law.

The only relevant testimony, besides that of Petitioner himself, dealing with Mr. Davis' present knowledge of the law and competency was that of the General Counsel for the Department of Human Services. He stated that Mr. Davis has worked in the area of blind services and he knows the federal law in this area, "so much so, when a legal question arises in that area, even though he is not employed as an attorney, I feel very comfortable in asking Jack, okay, Jack, what does the federal law say on it? And I never found him wrong."

Mr. Davis, in response to questioning by the Hearing Committee chairman gave the following responses regarding his competency and learning in the law.

Q. ... do you feel comfortable with the evolutionary changes in the last eight years that you are academically, psychologically, educationally, in

---

1. Rule 9, Section 19.3 provides that "Petitions for reinstatement by a disbarred or suspended attorney shall be filed under this Rule, regardless when or under what procedure the suspension or disbarment occurred."

a position where you could, as a matter of fact, should your mind change, practice law?

A. In some areas, I would feel competent. In some areas, I would not. Some areas, I am sure would necessitate some studying on my part, to be brought up to date on changes which have occurred, since I was active in practice, yes.

Q. Have you had the opportunity and made any effort, during the time you have been without a license, to keep up with reading Advance Sheets or Supreme Court Reports, or legal periodicals, in regard to the changes that have taken place?

A. To some degree, but not nearly to the degree that a person should, if he is going to be abreast of the changes.... there is no question that I will, if I went back into private practice, that there would be certain areas which would necessitate quite a lot of study, yes.

The Hearing Committee on March 4, 1982, filed its findings and decision. The Committee found that "the professional misconduct of the Petitioner which led to his disbarment and suspension was of a serious nature, the extent and degree of which the Petitioner now recognizes and candidly admits." The Committee further found "that the witnesses giving proof before the panel expressed their deep confidence in the abilities and moral qualifications of the Petitioner and recommended highly his reinstatement." The Committee concluded that Petitioner had demonstrated by clear and convincing evidence that "he has the moral qualifications, competency and learning in law required for his reinstatement." The Committee recommended that Mr. Davis be "reinstated immediately" and further recommended, "but not as a condition precedent to his reinstatement, that Mr. Davis make immediate arrangements to attend and complete one of the comprehensive bar review courses...."

On April 1, 1982, Disciplinary Counsel, pursuant to Rule 9, Section 1.3, sought review in the trial court. No additional proof was introduced before the trial judge and his review was upon the transcript of the evidence before the Hearing Committee. The sole issue before the trial court was whether Mr. Davis should be required to take the bar examination as a condition of his reinstatement. On March 10, 1983, the trial court entered judgment finding that Mr. Davis should not be required to pass the State Bar Examination. The Court granted reinstatement conditioned upon his reading and understanding certain specified rules of court and procedure and his attendance of a specific seminar.

No certification of completion of the required studies was filed by Appellee in 1983 or early 1984. Appellant moved to deny reinstatement and a hearing was held in August 1984. The trial court took the motion under advisement. Mr. Davis filed an affidavit in the trial court on November 9, 1984, stating that he had complied with the trial court's instructions and had read, studied and familiarized himself with the Rules of Civil, Criminal and Appellate Procedure, the Code of Professional Responsibility, the Supreme Court Rules, the Pattern Jury Instructions, and that he had attended the Tennessee Law Institute Annual Review Seminar held in Nashville on September 21 and 22, 1984. The trial court found the above course of study to be sufficient and ordered that Mr. Davis be reinstated.

■ Disciplinary Counsel, being dissatisfied with the decree of the trial court, has appealed directly to this Court pursuant to Rule 9, Section 1.3. We concur with the Hearing Committee and the trial court that Mr. Davis is morally fit to resume the practice of law in this State. The question presented in this appeal, whether Appellee should be required to take and pass the bar examination as a condition of his reinstatement, is one that has not been addressed by this Court in a published opinion. There are no Tennessee cases factually similar to the case at bar. Appellee relies upon *Scruggs v. Bracy*, 619 S.W.2d 101 (Tenn. 1981) as being factually similar to the case

at bar. This Court entered an order suspending Scruggs pursuant to Rule 9, Section 14, on November 29, 1977, following the affirmance of a criminal conviction in federal court. In December 1977, pursuant to Rule 9, Section 16.1, Scruggs filed with the Disciplinary Board (now Board of Professional Responsibility) a conditional guilty plea of one year and one day. The plea for stated punishment was approved by the Board upon recommendation of a hearing committee. This Court approved the punishment and an Order of Enforcement was entered on March 17, 1978, suspending Scruggs for a period of one year and one day. An attorney suspended "for less than one year with no conditions imposed may resume practice without reinstatement." Section 19.1. However, under Section 4.2 a suspension of a year or more requires "proof of rehabilitation to be demonstrated in a reinstatement proceeding." Thus, Scruggs was required to file a petition for reinstatement and he did so on March 20, 1979, pursuant to Rule 9, Section 19. A Hearing Panel denied Scrugg's petition and he filed a petition for review in the Circuit Court, which petition was denied. Scruggs then sought review in this Court, in accordance with Rule 9, Section 1.3. The issue in *Scruggs* was the same as in this case and any case in which reinstatement is sought—Did the petitioner demonstrate "by clear and convincing evidence that (1) he has the moral qualifications, (2) competency and (3) learning in law required for admission to practice law in this state and (4) that his resumption of the practice of law within the state will not be detrimental to the integrity and standing of the bar or the administration of justice, or (5) subversive of the public interest. Rule 9, Section 19.3." *Scruggs v. Bracy,* 619 S.W.2d at 103.

In *Scruggs* we held "that the evidence is clear and convincing that Petitioner is fit to resume the practice of law in this State, subject to certain conditions." 619 S.W.2d at 105. We required Scruggs to "submit to this Court, by affidavit, what he has done during the past two years to prepare himself for readmission to the practice of law

in this state. Upon receiving this affidavit we shall set the appropriate conditions for reinstatement as provided in Rule 9 Section 19.7." *Id.* at 105.

On August 13, 1981, Harry Scruggs filed with this Court a detailed affidavit setting out the course of study he had pursued from June 1979 until August 1981. The affidavit described his monthly study program during the past 26 months, which studies exceeded eleven hundred hours. Based upon the fact that less than three and a half years had elapsed from the time of his suspension until the case was heard in this Court, and based upon the fact that for the past 26 months he had pursued an active course of study in *all* phases of the law, we were of the opinion that he had adequately prepared himself for readmission. By order entered August 19, 1981, Scruggs was reinstated to resume the practice of law in this State.

In the *Scruggs* case we were dealing with a man who had been suspended for less than three and a half years when we heard his case. In the case at bar, nearly twelve years have elapsed from Davis' suspension in 1973 until the case was heard in this Court in June of 1985. The planned course of study by Scruggs and by Davis is substantially different, in the topics covered and the preparation and study involved.

In *Scruggs* we were dealing with a suspended attorney and here we have a disbarred attorney seeking reinstatement. Although no reported decisions have conditioned reinstatement upon passing the bar examination, several such matters have come before this Court. By order entered August 1, 1979, James Sanderson was reinstated conditioned upon his passing the bar examination. He had been disbarred in 1964 and he filed a petition for reinstatement in 1977. A hearing committee recommended reinstatement conditioned upon his passing the bar examination. He filed a motion in this Court to be relieved of that condition. This Court concurred in the recommendation of the hearing committee, denied the motion, and ordered reinstatement subject to his passing the bar examination.

In that case the length of time between disbarment and petitioner's conditional reinstatement was 15 years.

Gary Groover was disbarred from the practice of law on October 16, 1979. Pursuant to Rule 9, Section 19 he applied for reinstatement and a hearing panel recommended that he be reinstated upon his successful completion of the Tennessee bar examination. On January 16, 1985, this Court entered an order reinstating him subject to his successful completion of the Tennessee portion (essay portion) of the bar examination. The length of time between his disbarment and his conditional reinstatement was five years, three months, substantially less than in the case at bar. Both Sanderson and Groover successfully completed the bar examination and have been reinstated.

Appellee argues that he was disbarred because of personal misconduct and not for legal incompetence, therefore he like Scruggs, should not be required to take a bar examination. He contends that just as in the *Scruggs* case, his legal skills were not called into question. It is true that in *Scruggs* he was disbarred because his moral fitness was found to be inadequate. In the reinstatement proceedings upon a finding by this Court of moral fitness and competency in the law, Scruggs was not required to take the bar examination. However, as pointed out earlier, Scruggs had been out of the practice of law for only three and a half years and had pursued an extensive course of study. Mr. Davis has been out of the practice almost twelve years. It is the length of time away from the active practice of law that concerns this Court.

We think it would be helpful for the hearing committees and the trial courts to have some guidance as to when passage of the bar examination should be a condition to reinstatement. We have not heretofore made a policy decision on whether a disbarred attorney should be required to take a bar examination as a condition to reinstatement.

It should be remembered that the license to practice law in this State is a continuing proclamation by this Court that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and as an officer of the Court. Rule 9, Section 3.1. We owe a duty to the public, to the Bar, and to Mr. Davis himself.

The taking of the bar examination is an option, the use of which is contemplated by this Court, in determining a petitioner's competency and learning in the law. See Rule 9, Sections 19.7, 20.9, and 21.6.[2] Rule 9, Section 19.3 requires that the resumption of the practice of law within the State will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive to the public interest. To assure the integrity of the bar and to continue to proclaim to the public that the holder of a license to practice law possesses the necessary skills and ability to properly handle and discharge any matter entrusted to him by the public, we find it necessary to require the taking of a bar examination as a condition to reinstatement when one has not practiced law for a period of over ten years.

We must presume, without extenuating circumstances, that the passage of ten—twelve years creates the need for a course of study and examination to establish competency and learning in the law. As a general rule, one who has been disbarred[3] can anticipate as a condition to reinstatement the taking of the bar exam. As with any rule, there may be exceptions, however, in the case at bar we find no reason to create such an exception.

2. Section 19.7 provides for the taking of the bar examination by a person who has been "suspended or disbarred." Section 20.9 provides for the taking of the bar examination by a person who has been in "inactive status" for over five years. Section 21.6 provides for the taking of the bar examination by a person who has been transferred to "disability inactive status."

3. Section 19.2—Anyone disbarred may not apply for reinstatement until the expiration of at least five years from the date of disbarment.

Mr. Davis' law license shall be reinstated upon his submission to this Court of certification by the Board of Law Examiners of the successful completion of the "essay" portion of the examination for admission to practice law in this State.

COOPER, C.J., and FONES, BROCK and HARBISON, JJ., concur.

