# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
February 5, 2003 Session

## SAM THOMAS BURNETT v. BOARD OF PROFESSIONAL RESPONSIBILITY

**Direct Appeal from the Chancery Court for Fentress County**
**No. 01-53    J. S. Daniel, Judge, Sitting by Designation**

---

**No. M2002-01281-SC-R3-CV - Filed March 25, 2003**

---

This appeal involves the petition of Sam Thomas Burnett for reinstatement to the practice of law pursuant to Tennessee Supreme Court Rule 9, section 19.  The sole issue on appeal is whether the petitioner has the competency and learning in law required to practice law in this State.  Both the hearing committee and the trial court found the petitioner to be morally fit to practice law in this State and determined that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or the administration of justice or subversive to the public interest.  The Board has not challenged these findings on appeal.

Petitioner argues that the Chancery Court erred by conditioning the reinstatement of his license to practice law upon successful completion of the Tennessee bar examination.  The Board of Professional Responsibility ("Board") responds that the Chancery Court properly applied Board of Professional Responsibility v. Davis, 696 S.W.2d 528 (Tenn. 1985), which requires successful completion of the essay portion of the Tennessee bar examination as a condition of reinstatement in cases, such as this one, where the petitioner has not practiced law for a period of ten years.  We are constrained to disagree.  While Davis created a presumption that generally requires successful completion of the essay portion of the bar examination for persons seeking reinstatement who have not practiced law for ten years or more, this presumption may be overcome with clear and convincing proof that the petitioner has taken specific steps during the course of the suspension to maintain competency and knowledge of Tennessee law.  The petitioner has offered evidence sufficient to overcome the presumption.  Specifically, the record reflects that the petitioner obtained the required number of continuing legal education courses throughout his suspension, that he reviewed the advance sheets reporting Tennessee appellate decisions throughout his suspension, that he worked in law-related fields throughout his suspension, both while incarcerated and after his release, that following his release from prison he assisted two of his children in their law school studies and in their preparations for the bar examination, and that he discusses legal issues and legal developments on a regular basis with his children and other attorneys and also on a radio talk show in Nashville.  We hold that the petitioner has offered clear and convincing evidence of his "competency and learning in law" which overcomes the presumption requiring successful completion of the essay portion of the Tennessee bar examination as a condition to reinstatement.

Having satisfied the criteria, the petitioner is reinstated without condition. The judgment of the Chancery Court granting the petition for reinstatement therefore is affirmed as modified.

**Supreme Court Rule 9, § 1.3; Judgment of the Trial Court Affirmed
as Modified**

FRANK F. DROWOTA, III, C.J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Cecil D. Branstetter, Sr., Nashville, Tennessee, for the appellant, Sam Thomas Burnett.

William Walter Hunt, III and Sandra Garrett, Nashville, Tennessee, for the appellee, Board of Professional Responsibility.

**OPINION**

**Procedural Background**

In 1967, the appellant, Sam Thomas Burnett, received his Tennessee license to practice law. He was elected to the Tennessee House of Representatives in 1971, and served as a state representative and participated in the general practice of law, with a focus on trial practice, until 1983, when he pled guilty in the United States District Court for the Middle District of Tennessee to the misdemeanor offense of filing income tax returns after the due date. See 26 U.S.C. § 7203. As a result of this conviction, the petitioner was suspended from the practice of law for a period of three months and an indefinite period thereafter during which he remained physically confined as a result of the misdemeanor conviction. After serving this suspension, the petitioner was reinstated to the practice of law without a hearing. See Tenn. Sup. Ct. R. 9, § 19.1.

On March 26, 1991, the petitioner's license was suspended for a second time for a period of five years, retroactive to August 15, 1990, as a result of a jury verdict in the United States District Court for the Middle District of Tennessee finding him guilty of nine felony offenses, including conspiracy to engage in illegal gambling, illegal gambling, aiding and abetting, and mail fraud.[1] As a result of these convictions, the petitioner was in the custody of the United States Bureau of Prisons for more than fourteen months, and he was ordered to pay restitution to Joseph Capello in the amount of $48,000.

On March 10, 2000, nine years and seven months after this suspension, the petitioner sought reinstatement. Pursuant to Supreme Court Rule 9, section 19.3, the petition was referred to a hearing committee of the Board. A seven-hour hearing was held on January 31, 2001, at which the petitioner presented nine witnesses and offered into evidence several written exhibits. The hearing committee issued a written opinion in July of 2001, granting the petition for reinstatement conditioned upon the

---

[1] The offenses are listed in detail in the March 26, 1991 Order of this Court.

petitioner's payment of the $48,000 court-ordered restitution and upon his successful completion of the Tennessee bar examination. See Tenn. Sup. Ct. R. 9, § 19.7.[2]

Pursuant to Supreme Court Rule 9, section 1.3,[3] both the Board and the petitioner appealed the hearing committee's decision to the Chancery Court for Fentress County. The Board asserted that the petitioner did not satisfy the requirements for reinstatement under Supreme Court Rule 9, section 19.3, which provides that the petitioner shall have the burden of demonstrating by clear and convincing evidence

> that the attorney has the moral qualifications, competency and learning in law required for admission to practice law in this State and that the resumption of the practice of law within the State will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive to the public interest.

In contrast, the petitioner asserted that he had offered clear and convincing proof as to all the prerequisites for reinstatement, including competency and learning in law, and that the hearing committee had erred in conditioning his reinstatement upon successful passage of the bar examination. The petitioner did not challenge that portion of the hearing committee's decision requiring him to satisfy the court-ordered restitution. Instead, the petitioner introduced into evidence as an exhibit an executed release from Joseph A. Cappello stating that the court-ordered $48,000 restitution had been satisfied. Based upon the record before the hearing committee and this release, the trial court affirmed the hearing committee's decision conditioning the petitioner's reinstatement upon his successful completion of the Tennessee bar examination.

Pursuant to Rule 9, section 1.3, the petitioner filed an appeal in this Court.[4] The Board did not appeal the trial court's decision, and in this Court, the Board has not challenged the petitioner's moral qualifications or argued that the petitioner's resumption of the practice of law will be detrimental to the integrity and standing of the bar or the administration of justice or subversive to

---

[2] The pertinent portion of Section 19.7 provides as follows: "[T]he judgment may make such reinstatement conditional upon the payment of all or part of the costs of the proceeding, and upon the making of partial or complete restitution to parties harmed by the petitioner's misconduct which led to the suspension or disbarment; and the reinstatement may be conditioned upon the furnishing of such proof of competency as may be required by the judgment, in the discretion of the Supreme Court, which proof may include certification by the Bar Examiners of the successful completion of examination for admission to practice." (Emphasis added.)

[3] The pertinent portion of Section 1.3 provides as follows: "The respondent or the Board may have a review of the judgment of a hearing committee in the manner provided by T.C.A. § 27-9-101 et seq., except as otherwise provided herein. The review shall be on the transcript of the evidence before the hearing committee, its findings and judgment and upon such other proof as either party may desire to introduce. The trial judge shall weigh the evidence and determine the facts by the preponderance of the proof."

[4] The pertinent portion of Section 1.3 provides as follows: "Either party dissatisfied with the decree of the circuit or chancery court may prosecute an appeal direct to the Supreme Court where the cause shall be heard upon the transcript of the record from the circuit or chancery court, which shall include the transcript of evidence before the hearing committee."

the public interest.[5]  Before this Court, therefore, the sole issue is whether the petitioner demonstrated by clear and convincing evidence "the competency and learning in law required for admission to practice in this State." Tenn. Sup. Ct. R. 9, § 19.3.

## Scope of Review

In resolving this issue, this Court must carefully review the transcript of the record from the chancery court, which includes the transcript of evidence before the hearing committee. Tenn. Sup. Ct. R. 9, § 1.3. Our review is de novo with a presumption that the trial court correctly decided the case, unless the preponderance of the evidence is contrary to the trial court's decision. Patty v. Board of Professional Responsibility, 90 S.W.3d 641, 644 (Tenn. 2002).

## Summary of Evidence

The record in this case includes a substantial amount of proof relating to the issue in this appeal. The petitioner offered into evidence a letter from Mr. David Shearon, Executive Director of the Tennessee Commission on Continuing Legal Education and Specialization, indicating that for the period 1990 to 1999, practicing attorneys were required to obtain 120 hours of general and 21 hours of ethics credit and that during this time period the petitioner obtained 122 hours of general and 21.5 hours of ethics continuing legal education credits.

Testifying in his own behalf, the petitioner related that he had been employed in law-related jobs since his suspension. He had served as issue-specific contract lobbyist at the General Assembly on several occasions since his release from prison, and while incarcerated, he had spent twelve to fourteen hours per day in the law library at Eglin Air Force Base studying the law and assisting other inmates prepare legal papers in both criminal and civil matters. In addition, throughout his suspension an attorney in Crossville provided the petitioner advance sheets containing Tennessee appellate decisions. The petitioner testified that he reviewed and studied these decisions to remain abreast of changes in Tennessee law. From 1992 to 1996, the petitioner had assisted both of his sons with their legal education and their preparation for the Tennessee bar examination by discussing and explaining cases and legal principles. The petitioner's sons testified that since becoming licensed Tennessee attorneys they had continued to discuss substantive legal issues and trial strategy with the petitioner, and they described him as very knowledgeable and competent with respect to Tennessee law.

In 1994, the petitioner was hired as a regular panelist on a daily news and public affairs radio program in Nashville – "Teddy Bart's Round Table." He was serving as a panelist on the program at the time of the hearing in 2001. In that role, the petitioner fielded and responded to questions from the listening audience, and many of these questions were related to developing and interesting legal

---

[5] Both the hearing committee and the trial court found the petitioner to be morally qualified to practice law in this State.

issues. The petitioner testified that he studied the law and legal developments so that he would accurately answer the questions posed by the listeners on the daily broadcasts.

Teddy Bart, a panelist and part-owner of the radio program, wrote a letter in support of the petitioner's reinstatement and testified at the hearing. Mr. Bart opined that the petitioner's insights and opinions are an essential element of the radio program. Mr. Bart confirmed that the petitioner was often asked questions regarding the law, and he noted that the petitioner "has been invaluable in explaining those in a way that the audience can understand." Mr. Bart further noted that the program very rarely received feedback indicating that the petitioner had responded incorrectly. Mr. Bart testified that he would have the petitioner represent him if he needed a lawyer.

In 1999, the petitioner became an independent investigator for the Tennessee Human Rights Commission, and he was serving in that role at the time of the hearing in 2001. The petitioner testified that he is assigned a file containing a housing or employment discrimination complaint and that he investigates the complaint and makes a preliminary recommendation as to whether or not cause exists for further action. This preliminary recommendation is governed by both state and federal statutes and rules. The petitioner compared his role as an independent investigator to that of a juror, gathering the facts and applying established legal principles to those facts in order to make the preliminary recommendation.

Julius Sloss, Executive Director of the Tennessee Human Rights Commission, submitted a letter in support of the petitioner's reinstatement and testified at the hearing on behalf of the petitioner. Mr. Sloss said that the petitioner had performed admirably as an independent investigator and that he had processed his work assignments at a rate surpassing most of his peers. Mr. Sloss described the petitioner as very knowledgeable of the law as it relates to housing and employment cases and said that the petitioner's legal training enabled him to perform the required duties of an independent investigator at a high level.

Several other individuals provided letters that are particularly relevant to the issue of the petitioner's competency and learning in the law. Circuit Judge John Turnbull, who handles both civil and criminal cases in the Thirteenth Judicial District, where the petitioner practiced law, submitted a letter and testified at the petitioner's hearing. Judge Turnbull stated that he had no doubt about the petitioner's competency and that he would feel comfortable if the petitioner is reinstated to the practice of law without passing the bar examination. After noting that the petitioner had maintained the required number of continuing legal education hours, Judge Turnbull opined that "right now, even without practicing for the last ten years, he knows more law than 75 percent of the lawyers that are practicing in my district."

John Marshall Roberts, a licensed Tennessee attorney, former general sessions judge, district attorney general, assistant state attorney general, and United States Attorney, also submitted a letter and testified on behalf of the petitioner. Mr. Roberts had practiced law in Livingston, Tennessee for fourteen years and during that time was acquainted with the petitioner and familiar with his ability

as an attorney. When asked whether the petitioner is sufficiently competent and learned in the law to merit reinstatement, Mr. Roberts responded:

> I wouldn't have any doubt about it at all that – I did not know he'd been keeping his CLE up to date and been doing that. But I would have absolute confidence that, if he was about to face a legal issue, he would know the right books to go to and he would go to them. And if he hadn't already been to them, he would anyway. I don't have any doubt about his competency as a lawyer.

Former Governor Ned Ray McWherter also submitted a letter in support of reinstatement and testified at the hearing on the petitioner's behalf. Governor McWherter testified as to the petitioner's past legal competency and ability, stating that the petitioner had served as the House Floor Majority Leader for many years and in that role, explained difficult legal issues relating to statutes and legislative debates. As to the petitioner's present competency and learning in the law, Governor McWherter testified that the petitioner is very capable and has a photographic mind. Further, Governor McWherter said he "think[s] so much" of the ability of the petitioner that he asked to testify at the hearing, and stated that in his opinion, the petitioner "is qualified to represent a client in a responsible way," and further stated, "I would be delighted to have him represent me if I needed legal representation."

Also submitting a letter and testifying on behalf of the petitioner was Aubrey Harwell, a licensed Tennessee attorney, partner in the law firm of Neal and Harwell, and past president of the Nashville Bar Association. Mr. Harwell testified that he was aware that the petitioner had completed the required number of continuing legal education courses, had reviewed Tennessee advance sheets, and had assisted his sons in their legal studies. Based on this information, Mr. Harwell testified as to the petitioner's competency and learning in the law as follows:

> There was a time . . . when Tommy Burnett was one of the premier trial lawyers in his part of the State. . . . He was thought of as one of the finest and most skilled trial lawyers up there. He has been away from our profession for some period of time, but I have discussed that issue with him. And to the degree that one in my position can assess the ability of one in his position, I'm satisfied that he's qualified. I have not seen him in a courtroom, obviously, because he hasn't got a license. But I remember seeing him in a courtroom a long time ago, and he was one of the best trial lawyers I'd seen.

Mr. Harwell further stated that he would have no hesitancy whatsoever in associating with the petitioner or working with him in cases if the petitioner's license to practice law is reinstated and had in the previous two to three years been involved in cases about which he would have consulted the petitioner had the petitioner been licensed.

In addition to the sworn testimony, the petitioner also offered into evidence several letters supporting his reinstatement and attesting to his competency and learning in the law. For example,

Francis S. Guess, Chairman of the Tennessee Human Rights Commission, submitted a letter stating that the petitioner's performance as an independent investigator "clearly demonstrates his exceptional knowledge of the law." Furthermore, S. Roger York, a Crossville attorney, submitted a letter stating: "I have discussed employment with Mr. Burnett and my office is willing to employ Mr. Burnett and to supervise his practice of law for whatever time the Board deems necessary, if at all." Another Crossville attorney, James P. Smith Jr., also recommended that the petitioner's license be reinstated, saying: "I believe that Mr. Burnett's license to practice law should be restored and that doing so would be in the best interest of the public at large as well as the local bar. Mr. Burnett has many wonderful talents and attributes and should be allowed to share his skills and talents with the public and the local bar." Finally, Circuit Court Judge Barbara Haynes of the Twentieth Judicial District in Nashville, who served as chairperson of the Tennessee Sentencing Commission, also submitted a letter in support of reinstatement, explaining the petitioner's past and present competency as follows:

> I first became acquainted with Mr. Burnett in the course of the Sentencing Commission where he was a worthy adversary but more important an able advocate for the new criminal code. Mr. Burnett's knowledge of the criminal law was only exceeded by his photographic memory and by his willingness to work diligently to improve a code both constitutionally and practically for our Criminal Justice System.
>
> Since his release I have on many, many occasions heard him explain his position, his background and the lessons he has learned on our local radio station. But more importantly over and over again I have found him to use his legal background and steered the conversation to the appropriate law or laws of this State.

The Board did not present any proof before the hearing committee to challenge the petitioner's competency and learning in the law, and no additional proof relating to this issue was introduced before the trial court.

## Analysis

In this Court, the petitioner argues that he demonstrated his competency and learning in the law by clear and convincing proof and that the hearing committee and the trial court erred by conditioning his reinstatement upon passage of the Tennessee bar examination. In response, the Board, argues that the hearing committee and the trial court properly applied this Court's decision in Davis which, the Board urges, mandates bar passage as a condition of reinstatement where the person seeking reinstatement has not practiced law for ten years or more. We disagree.

The 1985 Davis decision was this Court's first opportunity in a published opinion to consider whether successful completion of the bar examination is an appropriate condition of reinstatement. 696 S.W.2d at 530. The ethical violations in Davis occurred prior to this Court's adoption of Rule 9. The disbarment proceedings were instituted in the Chancery Court by the Nashville Bar Association. On August 31, 1973, the Chancellor found Mr. Davis guilty of (1) failing to prosecute

two separate divorce actions; (2) furnishing to his clients copies of orders known to be forged, false, and void which purported to be orders granting his clients a divorce; (3) failing to prosecute a negligence claim and allowing the statute of limitations to expire; (4) misrepresenting facts to his client and to the Grievance Committee of the Nashville Bar Association; (5) representing to a client that criminal charges against him had been dismissed, knowing such representation to be false and failing to take the proper steps to represent his client. Id. at 529. The Chancellor found the foregoing matters to be acts of unprofessional conduct, dishonesty, and malpractice which rendered Mr. Davis unfit to be a lawyer. Therefore, Mr. Davis was disbarred and his license to practice law suspended for ten years, with leave to seek reinstatement after five years. Id.

Mr. Davis applied for reinstatement approximately eight years later on August 13, 1981. Before the hearing committee, Mr. Davis testified that his disbarment and suspension had resulted from drug abuse, that he had been rehabilitated and off drugs since 1974, that he had been working at the Department of Human Services since 1976, and that he had received several promotions. At the time of the hearing, Mr. Davis, himself blind, held the position of Assistant Director for Services for the Blind. Id. Although he was seeking reinstatement, Mr. Davis had no plans to return to the active practice of law. Id. at 529-30.

As to his competency and knowledge of the law, Mr. Davis presented little proof. General Counsel for the Department of Human Services testified that even though Mr. Davis was not employed as an attorney, he often conferred with Mr. Davis about federal law issues involving blind services and that Mr. Davis's opinions were sound. During the hearing, Mr. Davis was questioned about his competency, and the following exchange occurred:

Q. . . . do you feel comfortable with the evolutionary changes in the last eight years that you are academically, psychologically, educationally, in a position where you could, as a matter of fact, should your mind change, practice law?

A. In some areas, I would feel competent. In some areas, I would not. Some areas, I am sure would necessitate some studying on my part, to be brought up to date on changes which have occurred since I was active in practice, yes.

Q. Have you had the opportunity and made any effort, during the time you have been without a license, to keep up with reading Advance Sheets or Supreme Court Reports, or legal periodicals, in regard to the changes that have taken place?

A. To some degree, but not nearly to the degree that a person should, if he is going to be abreast of the changes . . . there is no question that I will, if I went into private practice, that there would be certain areas which would necessitate quite a lot of study, yes.

Davis, 696 S.W.2d at 529-30.

Despite Mr. Davis's own admission that he had not remained abreast of legal developments during his suspension, the hearing committee reinstated his license with the recommendation that "Mr. Davis make immediate arrangements to attend and complete one of the comprehensive bar review courses. . . ." Id. at 530. Disciplinary Counsel appealed this decision, and the trial court on March 10, 1983, granted reinstatement conditioned "upon his reading and understanding certain specified rules of court and procedure and his attendance of a specific seminar." Id. Over nineteen months later, Mr. Davis fulfilled these conditions, and the trial court ordered reinstatement.

Dissatisfied with this decision, Disciplinary Counsel appealed directly to this Court. This Court first pointed out that the "license to practice law in this State is a continuing proclamation by this Court that the holder is fit to be entrusted with professional and judicial matters and to aid in the administration of justice as an attorney and as an officer of the Court." Id. at 532. After considering the entire record, including the nature of the conduct resulting in Mr. Davis's disbarment, the dearth of evidence attesting to Mr. Davis's competency and learning in the law, and the length of time Mr. Davis had been away from the practice of law, we modified the trial court's decision by conditioning Mr. Davis's reinstatement upon successful completion of the essay portion of the Tennessee bar examination. Id. at 533. In so doing, we stated:

> Rule 9, Section 19.3 requires that the resumption of the practice of law within the State will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive to the public interest. To assure the integrity of the bar and to continue to proclaim to the public that the holder of a license to practice law possesses the necessary skills and ability to properly handle and discharge any matter entrusted to him by the public, we find it necessary to require the taking of a bar examination as a condition to reinstatement when one has not practiced law for a period of over ten years.
>
> We must presume, without extenuating circumstances, that the passage of ten–twelve years creates the need for a course of study and examination to establish competency and learning in the law. As a general rule, one who has been disbarred can anticipate as a condition to reinstatement the taking of the bar exam. As with any rule, there may be exceptions, however, in the case at bar we find no reason to create such an exception.

Id. at 532 (emphasis added).

While the language admittedly could have been tighter, considered as a whole and taken in context, Davis did not create a mandatory reinstatement condition, applicable in every case. Instead, this language created a presumption that successful completion of the essay portion of the Tennessee bar examination is generally necessary to obtain reinstatement when a petitioner has not practiced law for ten years. The Court in Davis clearly recognized that there will be exceptions and indicated that the presumption may be overcome by clear and convincing proof of "extenuating circumstances." Id. Clear and convincing proof that the petitioner has taken specific measures

during the course of the suspension which enabled the petitioner to maintain his or her competency and knowledge of the law certainly qualifies as extenuating circumstances. For example, in <u>Scruggs v. Bracy</u>, this Court required Mr. Scruggs to present an affidavit describing "what he has done during the past two years to prepare himself for readmission to the practice of law in this state." 619 S.W.2d 101, 105 (Tenn. 1981). Mr. Scruggs submitted a detailed affidavit describing his monthly legal study program for the preceding twenty-six months, which exceeded eleven hundred hours. <u>Davis</u>, 696 S.W.2d at 531. In <u>Davis</u>, this Court explained why Mr. Scruggs was reinstated, stating as follows:

> Based upon the fact that less than three and a half years had elapsed from the time of his suspension until the case was heard in this Court, and based upon the fact that for the past 26 months he had pursued an active course of study in *all* phases of the law, we were of the opinion that he had adequately prepared himself for readmission.

<u>Id.</u> at 531 (emphasis in original). In contrast to <u>Scruggs</u>, the petitioner in <u>Davis</u> admitted that he had not adequately prepared himself for readmission, stating: "To some degree, but not nearly to the degree that a person should, if he is going to be abreast of the changes . . . there is no question that I will, if I went into private practice, that there would be certain areas which would necessitate quite a lot of study. . . ." <u>Id.</u> at 530.

With respect to the course of study and preparations for readmission, the petitioner's case is markedly different from <u>Davis</u> and very similar to <u>Scruggs</u>. The proof clearly establishes that the petitioner has made every effort to maintain his competency and knowledge of Tennessee law. He has taken specific, documented steps such as completing continuing legal education courses, reviewing advance sheets, obtaining law-related employment while he was incarcerated and after his release so that he could remain abreast of legal developments, and assisting his sons in their legal educations and bar preparations. Moreover, unlike Mr. Davis, the petitioner offered a great deal of proof from lawyers and judges as to his competence and knowledge of Tennessee law. In fact, not a single word in this record calls into question the petitioner's competence and knowledge of Tennessee law, and unlike <u>Davis</u>, the conduct for which the petitioner was suspended cannot be described as malpractice. Therefore, we hold that the petitioner has offered clear and convincing proof which overcomes the presumption that he must successfully complete the bar examination prior to reinstatement.

## Conclusion

Having offered clear and convincing proof of his competency and learning in the law, the petitioner's reinstatement need not be conditioned upon his successful completion of the essay portion of the Tennessee bar examination. Therefore, the judgment of the Chancery Court affirming the hearing committee's decision granting the petition for reinstatement is affirmed as modified.

_____
FRANK F. DROWOTA, III,
CHIEF JUSTICE