**BOARD OF PROFESSIONAL RESPONSIBILITY**

v.

**William Douglass LOVE.**

Supreme Court of Tennessee, at Nashville.

May 12, 2008.

Gregory Robert Atwood, Nashville, Tennessee, for the appellant, William Douglass Love.

Sandy Garrett (oral argument) and Laura Chastain (brief), Nashville, Tennessee, for the appellee, Board of Professional Responsibility.

## OPINION

CORNELIA A. CLARK, delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER, GARY R. WADE and WILLIAM C. KOCH, JR. joined.

This is a direct appeal from a trial court's decision, which modified a hearing panel's judgment granting a suspended lawyer's Petition for Reinstatement of his law license contingent upon compliance with three conditions. In light of the change of the applicable standard of review on July 1, 2006, this case requires us to determine whether the trial court should have employed the standard in effect when the hearing panel rendered its decision or the standard in effect when the trial court heard and decided the case. It also requires us to address the circumstances under which a trial court is permit-

ted to modify a hearing panel's decision. Because the trial court heard this case in August 2006, it should have adhered to the standard of review that became effective on July 1, 2006. This standard of review was not applied, and therefore, the trial court erred by modifying all but one of the hearing panel's reinstatement conditions. Accordingly, we reverse the trial court's judgment in part, affirm in part, and remand this case to the trial court for issuance of an order consistent with our holdings herein.

### Factual and Procedural History

William D. Love ("Love") began practicing law in 1979 at thirty-six years of age. During his law career, Love worked in firm, partnership, and solo practitioner settings. In each of these settings, except for the early years of his career, Love limited his practice primarily to criminal law.

Both before and during his legal career, Love abused alcohol. Love first sought treatment for his abuse in 1990. At that time, Love spent eighteen days in a Veterans Administration hospital and another two-and-one-half years in an outpatient treatment program. Love's completion of the program, however, did not reduce his alcohol consumption; if anything, his drinking increased throughout the 1990s.

### Disciplinary Proceedings

Love's excessive drinking compromised his ability to practice law competently. In August 1987, September 1990, and October 1990, Love received private informal admonitions for neglect of client matters and failing to communicate with clients. In April 1991, he received a public censure for neglect of a legal matter resulting in the dismissal of his client's case. In August 1994, Love received a private reprimand for accepting a client's entire attorney fee and then failing to file the client's divorce case for more than six months.

On June 27, 1995, new disciplinary charges were filed against Love. This time, three different grounds were alleged. First, after accepting $500 from a client, Love failed to file a suit on the client's behalf. Second, after failing to file the claim, Love sent a letter to the client informing her that he was holding the $500 in his escrow account to cover the bond costs. At the time the letter was written, however, Love did not have a trust account. Third, Love accepted money from another client for whom he failed to provide legal services. After a hearing panel was convened and a decision rendered on these charges in May 1996, this Court suspended Love's law license for thirty days, retroactive to May 3, 1996 ("Suspension I").[1] In addition to the suspension of Love's law license, we ordered Love to participate in an alcohol treatment program in conjunction with Nashville Lawyers Concerned for Lawyers, to complete an ethics course at an accredited law school, and to pay $4,280.00, the costs of his disciplinary proceedings.

In December 1996, we suspended Love's law license for failure to complete his continuing legal education ("CLE") requirements from the preceding year ("Suspension II").[2] On January 27, 1997, Love was disciplined again, this time for failing to represent two clients in their court matters. After a hearing panel was convened and the panel's decision rendered on October 22, 1997, this Court suspended Love's

---

1. Love delayed the adjudication of this case by failing to be evaluated for alcoholism. As a result, this Court's suspension order was not issued until April 7, 1999.

2. Although it is disputed in the record whether Love returned to the practice of law after this suspension, no other aspects of Suspension II are at issue in this case. Thus, Suspension II will not be further referenced.

law license for one year.[3] Additionally, we suspended Love's law license indefinitely until such time that he completed three conditions: (1) restitution of $100 to each of the two clients that Love failed to represent properly; (2) compliance with all prior orders of the Board of Professional Responsibility ("Board"), including the conditions set forth in the Suspension I order; and (3) the ability to demonstrate in a reinstatement proceeding that he possesses the psychological and psychiatric competence to engage in the practice of law. We also ordered Love to pay the Board $3,011.42, the costs of these disciplinary proceedings ("Suspension III").

Finally, on November 23, 1998, this Court entered an order suspending Love's law license for a three and one-half year period, retroactive to June 30, 1997, for theft ("Suspension IV"). The suspension resulted from a Conditional Guilty Plea entered into with the Board, in which Love admitted that from June 1995 to July 1996, while serving as conservator of his mother's affairs, he misappropriated more than $13,000.00 from the estate to pay his own car payments and money owed to a former wife. When the theft was brought to the attention of the District Attorney General, Love agreed to the filing of an information in the Davidson County Criminal Court. Love subsequently entered a conditional plea of guilty and was placed on judicial diversion for theft of over $10,000.00, a Class C felony.[4] *See* Tenn.Code Ann.

§ 40–35–313 (1996). Under the plea's terms, Love was ordered to pay the estate[5] restitution of $7,000.00, with the balance to be taken from his inheritance, and to report to a probation officer every month for up to six years. Love complied with the first term by receiving $18,983.05 less than the other heirs under the estate distribution, but he failed to report to his probation officer for more than three months during his probationary period. Subsequently, his judicial diversion was terminated and his conditional guilty plea was changed to a standard guilty plea. Thus, Love was convicted of a felony.

In addition to Love's three and one-half year suspension in this case, we suspended Love for an additional indefinite period until he met six conditions: (1) completion of an ethics course at a law school approved by the Tennessee Board of Law Examiners; (2) satisfactory completion of an alcohol treatment program approved by the Board; (3) demonstration of sobriety at the time of any reinstatement petition; (4) full compliance with all court restitution orders; (5) full restitution to the victims whether they have court judgments or not; and (6) payment to the Board for the proceeding costs in the amount of $1,752.65.

### Reinstatement Proceedings

On July 28, 2005, Love filed a Petition for Reinstatement pursuant to Tennessee Supreme Court Rule 9, section 19.3.[6] The

---

3. The one year suspension began the day the order was issued, January 9, 1998.

4. During the Panel hearing, Love affirmatively answered that he conditionally pled guilty to a Class D felony. Theft of property of more than $10,000, but less than $60,000, however, is a Class C felony. *See* Tenn.Code Ann. § 39–14–105 (1991).

5. Although the record is unclear, sometime after his theft, Love's mother passed away.

6. Love initially filed for reinstatement in 2004. However, there was some confusion between Love and the Board as to whether Love's completion of a CLE ethics course was enough to satisfy this Court's orders in Suspensions I and IV that Love take an ethics course at an accredited law school. When Love was told by the Board that the CLE course did not satisfy this condition, Love was allowed to rescind his Petition for Reinstatement without being subject to the successive petitions limitation. *See* Tenn. Sup.Ct. R. 9, § 19.8 ("No petition for reinstatement under

Board appointed a hearing panel ("Panel") to review the petition's merits. *See* Tenn. Sup.Ct. R. 9, § 19.3. A hearing was held on February 17, 2006. The Panel found that Love had completed all but one of the requirements from Suspensions I, III, and IV necessary to be reinstated and had carried his burden of demonstrating:

> by clear and convincing evidence that [he] has the moral qualifications, competency and learning in law required for admission to practice law in this state and that the resumption of the practice of law within the state will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive to the public interest.

*Id.*

Specifically, the Panel found, with regard to Suspension I, that Love successfully completed an alcohol treatment program with the Tennessee Lawyers Assistance Program ("TLAP") and successfully completed an ethics course at the Nashville School of Law. As for Suspension III, the Panel found that Love made restitution to the two clients in the amount of $100.00 each and demonstrated, through his and others' testimony and the psychological report submitted by John W. Fite, Ph.D, that Love possesses the psychological and psychiatric competence necessary to engage in the practice of law. With regard to Suspension IV, the Panel found that Love had: (1) successfully completed an ethics course at an accredited law school; (2) participated, and continues to participate, in an alcohol treatment program with TLAP; (3) demonstrated, through his testimony, his wife's testimony, his former wife's testimony, and the testimony of Robert Albury Jr., Executive Director of TLAP, that he had been sober for more than three years; and (4) made full restitution to all victims and was in compliance with all restitution orders.

The Panel further concluded that Love's acts, which led to his multiple suspensions, were the direct result of his substance abuse problem, that Love is committed to his sobriety, and that, therefore, Love is unlikely to commit these acts in the future. Moreover, the Panel determined that Love demonstrated that he had the moral qualifications necessary to practice law, and, even though Love had "been absent from practice for seven years, [he] plainly demonstrated his competence and learning of the law required to practice law in this State." The Panel based this decision on Love's testimony, the testimony of other members of the Bar,[7] and the fact that as of the date of the hearing, Love was in compliance with all necessary CLE requirements. The Panel also determined that Love's readmission to practice would not be "detrimental to the integrity and standing of the bar or the administration of justice or subversive to the public interest." Tenn. Sup.Ct. R. 9, § 19.3. This determination was based on witness testimony and the willingness of attorneys to assist Love with legal matters that may arise as he re-enters the practice of law. Finally, the Panel found that Love had not paid the Board the costs of the disciplinary

---

this Rule shall be filed within three years following an adverse judgment upon a petition for reinstatement filed by or on behalf of the same person.").

7. Judge Carol Solomon, Circuit Court, Eighth Judicial Circuit; Judge Mark Fishburn, Davidson County Criminal Court, Sixth Division; Judge William E. Higgins, Davidson County General Sessions, Division VII; Judge Aaron Holt, Davidson County General Sessions, Division II; Robert Albury, Jr., Executive Director of the Tennessee Lawyer's Assistance Program; Richard Taylor, Sr., assistant district public defender; Robert A. Strong, Assistant District Attorney for Davidson County; Radaela Seifert, general counsel and senior vice-president of Community Health Systems; and C. Edward Fowlkes all testified on Love's behalf.

hearings as required in Suspensions I, III, and IV.

Pursuant to these findings, the Panel recommended that Love be reinstated to the practice of law subject to the following conditions: (1) that Love practice in a group practice or with a practice monitor for a period of one year from reinstatement;[8] (2) that he enter into a five-year contract with TLAP, consisting of standard protocols established by TLAP to monitor his sobriety; and (3) that he reimburse the Board for the past-due disciplinary fees, $9,043.07[9] and that "such amount can be repaid by a payment plan agreeable to Disciplinary Counsel."

On May 2, 2006, pursuant to Tennessee Supreme Court Rule 9, section 1.3, the Board filed a Petition for Writ of Certiorari requesting that the Panel's judgment be modified in two ways. First, the Board argued that the Panel erred in finding that Love had been out of practice only seven years, instead of nine, and so should have been required to retake and successfully pass the Tennessee bar examination.[10] Second, the Board argued that the Panel should have required Love to pay the total costs of his disciplinary proceedings as a condition precedent to seeking reinstatement, as required by Tennessee Supreme Court Rule 9, section 24.3.

We granted the Board's petition on May 25, 2006, and assigned a senior judge to "try the case." Tenn. Sup.Ct. R. 9, § 1.5. On July 1, 2006, prior to the case being heard, this Court amended the standard of review of a trial court in reviewing hearing panel decisions.

The trial court heard the matter on August 9, 2006, and after reviewing the entire record, additional testimony from Love, and the arguments of counsel, the trial court concluded that: "the findings of the Panel are correct and proper. However, the Court finds that each of the conditions recommended by the Hearing Panel should be modified and that an additional condition should be added." First, the trial court determined that the requirement of a group practice *or* the appointment of a practice monitor for *one* year was "inadequate." Instead, the trial court found that Love "should be required to practice in a group practice for *five* years *and* that he should have a practice monitor for *five* years." (first and third emphases added). Second, the trial court determined that the five-year contract requirement with TLAP should be extended to a ten-year contract. Third, the trial court found that the past-due disciplinary fees must be paid in full prior to the reinstatement of Love's law license. Fourth, the trial court added the condition that "Love must confine his law practice to criminal cases." In adding this limitation, the trial court stated that "[i]t does not appear that

---

8. The condition that Love practice in a group setting or under the supervision of a practice monitor was not one originally requested by the Board, but was instead suggested sua sponte by TLAP Executive Director Albury during his testimony. It appears from the record that this suggestion was made to address Love's tendency to isolate himself. The Panel provided no definition of "group practice" or "practice monitor" in its order and to the best of this Court's knowledge, the Board has never supplied definitions for these terms. Neither party, however, objected to this recommendation.

9. Our review of this Court's Orders of Suspension shows that the total costs of Love's disciplinary proceedings are actually $9,044.07.

10. In Love's calculation, he was suspended from practice of law from June 30, 1997, until 2004, when he first attempted to apply for reinstatement. On the other hand, the Board's calculation of Love's suspension is from May 3, 1996, the retroactive date of the Suspension I order, until either the date of the filing of the Petition for Reinstatement, July 28, 2005, or the date of the Panel hearing, February 17, 2006.

the retaking of the bar examination is necessary in this case." Although the trial judge ruled from the bench on August 9, written judgment was not entered until December 27, 2006.

On January 17, 2007, Love filed a Motion to Alter, Amend, or Modify Judgment, asking the trial court to alter three of the four conditions of his reinstatement.[11] After a hearing was held on March 1, 2007, in which additional proof was presented, Love's motion was denied. Subsequently, Love filed a direct appeal to this Court, *see* Tenn. Sup.Ct. R. 9, § 1.3, raising two questions: (1) whether the trial judge properly added restrictions and expanded conditions of reinstatement; and (2) whether the license to practice law held by an attorney in the State of Tennessee can be restricted to certain or particular areas of practice.

### Analysis

It is undisputed that Love had "the burden of demonstrating [to the hearing panel] by clear and convincing evidence that [he] has ... competency and learning in law required for admission to practice law in this state." Tenn. Sup.Ct. R. 9, § 19.3. The trial court's standard of review of the Panel's decision and our standard of review of the trial court's decision, however, are in dispute. Therefore, before this Court can address the two questions raised by Love, we must first determine what our standard of review of this case should be and what the trial court's standard of review of the Panel's decision was at the time of the trial court's hearing. We will address the latter standard first.

### Trial Court's Standard of Review of a Hearing Panel's Decision

The Panel conducted its hearing on February 17, 2006 and filed its judgment on March 30, 2006. The Board filed its Petition for Writ of Certiorari on May 2, 2006. On all of these dates, a trial court was required to review a hearing panel's decision under the same standard, pursuant to Tennessee Supreme Court Rule 9, section 1.3 (2005) ("old standard"). Effective July 1, 2006, the old standard was changed and replaced with a different standard of review. *See* Tenn. Sup.Ct. R. 9, § 1.3 (2007) ("new standard"). The trial court's hearing in this matter was conducted on August 9, 2006, after the new standard became effective. Because this matter involves proceedings both before and after the new standard of review became effective, we must determine whether the trial court should have employed the old standard or the new standard in reviewing the Panel's decision.

At the time of the Panel's hearing, Tennessee Supreme Court Rule 9, section 1.3, stated in pertinent part:

> The respondent or the Board may have a review of the judgment of a hearing committee in the manner provided by [Tennessee Code Annotated section] 27–9–101 et seq., except as otherwise provided herein. The review shall be on the transcript of the evidence before the hearing committee, its findings and judgment and upon such other proof as either party may desire to introduce. The trial judge shall weigh the evidence and determine the facts by the preponderance of the proof.

Tenn. Sup.Ct. R. 9, § 1.3 (2005). Under this standard, the old standard, "[w]here the trial judge bases his or her decision on the same evidence that is before the hearing panel, the trial judge must affirm the panel unless that evidence preponderates against those findings." *Cohn v. Bd. of*

---

11. Love did not request in this pleading that the trial court alter, amend, or modify the condition that Love pay the costs of his disci-

plinary hearings as a condition precedent to reinstatement. Instead, Love filed a separate Motion to Pay Judgment in Installments.

*Prof'l Responsibility*, 151 S.W.3d 473, 481 (Tenn.2004) (internal quotations omitted). However, under the old standard, the trial court could admit any "other proof as either party may desire to introduce." Tenn. Sup.Ct. R. 9, § 1.3 (2005).

Effective July 1, 2006, Tennessee Supreme Court Rule 9, section 1.3, was amended, and now states in pertinent part:

> The respondent-attorney (hereinafter "respondent") or the Board may have a review of the judgment of a hearing panel in the manner provided by [Tennessee Code Annotated section] 27–9–101 et seq., except as otherwise provided herein. The review shall be on the transcript of the evidence before the hearing panel and its findings and judgment. If allegations of irregularities in the procedure before the panel are made, the trial court is authorized to take such additional proof as may be necessary to resolve such allegations. The court may affirm the decision of the panel or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

> In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the *court shall not substitute its judgment for that of the panel as to the weight of the evidence on questions of fact.*

Tenn. Sup.Ct. R. 9, § 1.3 (2007) (emphasis added). Under the new, more limited standard of review, the trial court may modify or reverse a panel's decision in only the five enumerated circumstances, and the trial court's review is limited to the transcript of the evidence before the panel unless "allegations of irregularities in the procedure before the panel are made." *Id.* Therefore, given the greater limitations on a trial court's review under the new standard, we must determine which standard applied at the time of trial in order to determine whether the trial court erred in modifying the Panel's recommendations.

In *Doe v. Board of Professional Responsibility*, we adopted the procedure for interpreting Rule 9 and other rules promulgated by this Court. 104 S.W.3d 465, 469 (Tenn.2003). Noting that there "are well-established and well-known rules of construction which we apply when interpreting statutes enacted by legislative bodies," *id.*, but that the rules of this Court are not drafted pursuant to a legislative delegation of power,[12] we resolved nonetheless to review this Court's rules in the same manner as statutes. As we stated, "Upon due consideration, we conclude that it is prudent for this Court to likewise apply the

---

**12.** These same "well-established and well-known rules of construction" are also applicable to this Court's procedural rules that are promulgated by the joint actions of this Court and the General Assembly. *See Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn.1980) (stating that "[t]he rules governing practice and procedure in the trial and appellate courts of Tennessee were promulgated by joint action of the General Assembly and the Supreme Court[, and therefore, they] have the force and effect of law"); *Tenn. Dep't of Human Servs. v. Vaughn*, 595 S.W.2d 62, 63 (Tenn. 1980) (stating that Tennessee procedural rules "are 'laws' of this state, in full force and effect, until such time as they are superseded by legislative enactment or inconsistent rules promulgated by this Court and adopted by the General Assembly").

traditional rules of statutory construction to Rule 9 of the Rules of the Tennessee Supreme Court." *Id.*[13]

■ Applying statutory construction principles, this Court, on numerous occasions, has addressed the circumstances in which a change in a statute applies either retroactively or prospectively. *See, e.g., In re D.A.H.*, 142 S.W.3d 267, 273 (Tenn. 2004); *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn.1998); *Kuykendall v. Wheeler*, 890 S.W.2d 785, 787 (Tenn. 1994). The Tennessee Constitution states that "no retrospective law, or law impairing the obligations of contracts, shall be made." Tenn. Const. art. 1, § 20. Thus, a rule is presumed to operate prospectively unless there is a clear intent otherwise. There are, however, circumstances in which a rule may be deemed retroactive, even if no clear intent is provided. *Nutt,* 980 S.W.2d at 368. For example, rules considered remedial or procedural in nature apply retroactively, not only to causes of action arising before such acts become law, but also *to all actions pending when the law took effect,* unless a contrary intention is indicated or immediate application would produce an unjust result. *Id.; Kee v. Shelter Ins.,* 852 S.W.2d 226, 228 (Tenn. 1993); *State Dep't of Human Servs. v. Defriece,* 937 S.W.2d 954, 958 (Tenn.Ct. App.1996).

■ Tennessee Supreme Court Rule 9, section 1.3, is procedural and remedial in nature. In *Nutt,* this Court defined remedial laws as those that "provid[e] means or method whereby causes of action may be effectuated, wrongs redressed and relief obtained." 980 S.W.2d at 368 (quoting *Defriece,* 937 S.W.2d at 958). This Court's stated purpose for modifying the disciplinary system rules was to "improve the disciplinary enforcement system for the benefit of the public and the members of the legal profession." Tenn. Sup.Ct. ORDER April 25, 2006. This language clearly suggests that amendments to the Tennessee Supreme Court rules were made to improve, or remedy, the disciplinary enforcement system. Moreover, as this Court stated in *Nutt,* a procedural statute is one that "does not affect the vested rights or liabilities of the parties" but instead "addresses the mode or proceeding by which a legal right is enforced." 980 S.W.2d at 368. Tennessee Supreme Court Rule 9, section 1.3, does not affect Love's vested rights or liabilities. To the contrary, the rule focuses only on the way in which a trial court reviews a hearing panel's decision. And, because the new standard is procedural in nature and does not impair an obligation of contract, applying the new standard to trial court proceedings conducted after its effective date would not produce an unjust result. *See Kee,* 852 S.W.2d at 228. Accordingly, we hold that the new standard of review, which became effective July 1, 2006, was applicable during the trial court's August 9, 2006, hearing.

*This Court's Standard of Review of a Trial Court's Decision*

Having determined the applicable standard of review at the time of the trial court's hearing in this matter, we next decide what our standard of review is on appeal. Under the new standard, the basis for the trial court's modifications of the Panel's decision must be found in the enumerated circumstances listed in Tennessee Supreme Court Rule 9, section 1.3 (2007).

---

13. Moreover, other state courts that have addressed this issue have reached the same conclusion. *See People v. Roberts,* 214 Ill.2d 106, 291 Ill.Dec. 674, 824 N.E.2d 250, 256 (2005); *In re KH,* 469 Mich. 621, 677 N.W.2d 800, 803 (2004); *Coyle v. Bd. of Chosen Freeholders of Warren County,* 170 N.J. 260, 787 A.2d 881, 886 (2002); *Walker v. Schneider,* 477 N.W.2d 167, 172 (N.D.1991).

Therefore, unless the trial court concludes that:

> the panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record[,]

Tenn. Sup.Ct. R. 9, § 1.3 (2007), the trial court cannot modify the Panel's decision under the new standard. Moreover, under the new standard, "the [trial] court shall not substitute its judgment for that of the panel as to the weight of the evidence on questions of fact." *Id.*

■ Tennessee Supreme Court Rule 9, section 1.3, is virtually identical to Tennessee Code Annotated section 4–5–322(h), the statutory section covering judicial review under the Uniform Administrative Procedures Act ("UAPA"). Tennessee Code Annotated section 4–5–322 provides the standard of review that Tennessee courts use when reviewing an administrative agency's "final decision in a contested case":

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

> (5)(A) Unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn.Code Ann. § 4–5–322(a)(1), (h)(1)–(5)(A) (2005). Additionally, "[i]n determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." *Id.* § 4–5–322(h)(5)(B). Thus, just like this Court's standard of review under UAPA cases, under Tennessee Supreme Court Rule 9, section 1.3, our standard of review is restricted to the record, and the hearing panel's findings "may not be reversed or modified unless arbitrary or capricious or characterized by an abuse, or clearly unwarranted exercise, of discretion and must stand if supported by substantial and material evidence." *CF Indus. v. Tenn. Pub. Serv. Comm'n,* 599 S.W.2d 536, 540 (Tenn. 1980); *see* Tenn. Sup.Ct. R. 9, § 1.3 (2007).

### *Added Restrictions and Expanded Conditions of Reinstatement*

Having determined the applicable standard of review at the time of the trial court's hearing in this matter and our standard of review on appeal, we now consider whether the trial court properly added restrictions and expanded conditions of reinstatement. As previously discussed, under the new standard, the basis for the trial court's modifications of the Panel's decision must be found in the enumerated circumstances listed in Tennessee Supreme Court Rule 9, section 1.3 (2007).

■ The Panel's first reinstatement condition was that Love practice either in a group setting or under the supervision of a practice monitor for one year. Although neither party asked the trial judge to modify this condition, the trial court altered this condition in two respects: by requir-

ing Love to practice in a group setting *and* be under the supervision of a practice monitor; and to do so for a period of *five* years. The trial court, however, cited no authority indicating that the Panel's original recommendation on this point violated constitutional or statutory provisions; was in excess of the Panel's authority; was based on unlawful procedure; was arbitrary and capricious; or was an abuse of discretion or a clearly unwarranted exercise of discretion. Moreover, the trial court did not conclude that the Panel's recommendations on this issue were unsupported by the evidence, and nothing in our review of the record indicates as such. Given the limitations placed on the trial court under the new standard of review, we find that the trial court's modification of the group practice/practice monitor recommendation was erroneous. Accordingly, we reverse the trial court and reinstate the Panel's recommendation with regard to this modification.

■ The Panel's second reinstatement condition was that Love enter into a five-year contract with TLAP, "consisting of standard protocols established by TLAP to monitor [Love's] sobriety." The trial court extended this contract to ten years. Again, there is nothing in the trial court's order that indicates why it made this modification to the Panel's decision or on what basis it was justified. To the contrary, the testimony of Robert Albury, Jr., made it clear that no prior TLAP contracts had ever extended beyond five years. Additionally, Love had been alcohol-free nearly four years at the time of the trial court's hearing. Again, given the limitations under the new standard of review and the trial court's statements with regard to this modification, we find that the trial court's action was unwarranted. Accordingly, we reverse the trial court on this issue and reinstate the Panel's recommendation of a five-year TLAP contract.

■ The Panel's third reinstatement condition was that Love reimburse the Board for his prior disciplinary fees in the amount of $9,044.07 and that "such amount can be repaid by a payment plan agreeable to Disciplinary Counsel." Agreeing with the Board's argument on this point, the trial court modified this recommendation by requiring Love to repay his total disciplinary proceeding costs as a *condition precedent* to reinstatement. For the reasons stated below, the trial court correctly modified the Panel's recommendation on this issue.

In its Writ of Certiorari, the Board alleged that the Panel erred in allowing Love to pay the total costs of his disciplinary hearings after his reinstatement, as compared to making it a condition precedent to reinstatement. Specifically, the Board argued that this finding was in violation of the plain language of Tennessee Supreme Court Rule 9, section 24.3, which states in pertinent part:

> In the event that a judgment of disbarment[ ][or] suspension ... results from formal proceedings, the Board shall assess against the respondent the costs of the proceedings....
>
> ...
>
> Payment of the costs assessed by the Board pursuant to this rule *shall be required as a condition precedent* to reinstatement of the respondent attorney.

(Emphasis added).

Under the new standard of review, the trial court can modify the decision of the Panel if "the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions, or decisions are ... [i]n violation of constitutional or statutory provisions." Tenn. Sup.Ct. R. 9, § 1.3 (2007). In this instance, the Panel, in allowing Love to repay his court costs "by a payment plan agreeable to Disciplin-

ary Counsel," which included paying the costs subsequent to his reinstatement, incorrectly applied Tennessee Supreme Court Rule 9, section 24.3.[14] Therefore, the trial court did not err in modifying this portion of the Panel's recommendations for reinstatement. Accordingly, we affirm the trial court's order that Love's disciplinary fees be paid in full prior to the reinstatement of his law license.[15]

Finally, the trial court added a fourth reinstatement condition that Love limit his practice to criminal law. In its Writ of Certiorari, the Board alleged that the Panel incorrectly determined that Love had been out of practice for only seven years, instead of nine, and as such, argued that the Panel erred in not requiring Love to retake and pass the Tennessee bar examination. The trial court did not grant the request, but substituted this condition for reinstatement instead.

 Tennessee Supreme Court Rule 9, section 19.3, states that the petitioner "shall have the burden of demonstrating by clear and convincing evidence that [he or she] has ... competency and learning in law required for admission to practice law in this state." Moreover, Tennessee Supreme Court Rule 9, section 19.7, provides that "reinstatement may be conditioned upon the furnishing of such proof of competency ..., which proof may include ... successful completion of [the bar] examination." This Court has previously held that there is a presumption that the successful completion of the essay portion of the bar examination is generally necessary if the petitioner has not practiced law for over ten years. *See Office of Disciplin-*

ary Counsel v. Davis, 696 S.W.2d 528, 532 (Tenn.1985). However, taking the bar examination is not a mandatory reinstatement condition in every instance, even where the petitioner has not practiced law in over ten years. *Burnett v. Bd. of Prof'l Responsibility,* 100 S.W.3d 217, 225 (Tenn. 2003). Instead, this Court has "clearly recognized that there will be exceptions and indicated that the presumption may be overcome by clear and convincing proof of 'extenuating circumstances.' " *Id.* Accordingly, when the length of suspension is for a period ten years or less, the hearing panel has the discretion, on a case by case basis, to require the retaking of the bar examination. In this instance, Love was in compliance with all CLE requirements as of the date of the Panel hearing. Love successfully passed an ethics course at the Nashville School of Law. He testified that he continues to read and review court decisions, receives and reads legal journals, and reviews changes in volumes 7 and 7a of the Tennessee Code Annotated (volumes addressing criminal offenses and criminal procedure). Through this testimony, the Panel determined that Love demonstrated by clear and convincing evidence that it was not necessary for him to retake and pass the bar examination.

Therefore, even if Love had been suspended from the practice of law for nine years, this alone would not necessitate a finding that Love retake the bar examination. Instead, the determinative issue is whether the petitioner carries his or her burden by clear and convincing evidence that he or she is competent and learned in the law. In this instance, the Panel deter-

---

14. The Panel has the discretion to make reinstatement "conditional upon the payment of all or part of the costs of the proceeding." Tenn. Sup.Ct. R. 9, § 19.7. However, the discretion to limit the amount owed does not also include the discretion to alter when the costs of the proceedings must be paid.

15. In his appeal to this Court, Love did not specifically challenge the trial court's recommendation that his disciplinary fees be paid as a condition precedent to the reinstatement of his law license. Instead, we address this issue to clarify Tennessee Supreme Court Rule 9, section 24.3.

mined that Love did not need to retake the bar examination. The Panel expressly stated that Love "plainly demonstrated his competence and learning of the law required to practice law in this State." Therefore, under the new standard, the trial court may modify or reverse a hearing panel's decision only if one or more of the five enumerated circumstances listed in Tennessee Supreme Court Rule 9, section 1.3 is present. We find that none of the five enumerated circumstances were applicable on this issue, and therefore, the trial court erroneously modified the Panel's determination that Love was competent in the law. We therefore, reverse the trial court's modification that Love limit his legal practice to criminal law.[16]

### *Conclusion*

Under the new standard of review applicable to Board of Professional Responsibility hearing panel determinations, a trial court is permitted to modify or reverse a panel's decision only if certain circumstances are present. We have determined that no circumstances existed in this case to justify modification of the Panel's recommendations regarding the group practice/practice monitor and TLAP contract. For the same reasons, the trial court also erred in limiting Love's legal practice to criminal law. We therefore reverse the trial court's order with regard to these modifications. We affirm, however, the trial court's modification with respect to the repayment of Love's disciplinary costs, as this modification was warranted under the new standard of review. Accordingly, we remand this case to the trial court for issuance of an order consistent with our holdings herein.

Costs of this appeal are assessed equally, one-half to William Douglass Love, and his surety, and one-half to the Board of Professional Responsibility, for which execution may issue if necessary.

---

**16.** This holding pretermits the need to address Love's second question, whether a law license in the State of Tennessee can be restricted to only a certain or particular area of practice.