# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 5, 2008 Session

# BOARD OF PROFESSIONAL RESPONSIBILITY v. JAMES T. ALLISON

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-07-1059-3    Allen W. Wallace, Senior Judge**

---

**No. W2008-00338-SC-R3-CV - Filed May 14, 2009**

---

This is a direct appeal of a trial court judgment that modified a hearing panel's order suspending an attorney from the practice of law for sixty days. The trial court did not disagree with the hearing panel's findings regarding the attorney's misconduct but determined that the punishment was too harsh and, instead, ordered a public censure. After an independent review of the record, we conclude that the hearing panel's findings that the attorney commingled his personal funds with client funds, paid personal bills out of his trust account, failed to maintain proper trust account records, and failed to timely respond to Board inquiries were supported by substantial and material evidence and that this conduct violated the Rules of Professional Conduct. These violations, coupled with the aggravating factor that in 1998, the attorney was publicly reprimanded for commingling his personal funds with trust account funds and for paying personal expenses from his trust account, warrant the sanctions imposed by the hearing panel which require that the attorney be suspended from the practice of law for sixty days, that his trust account be monitored for a period of one year following reinstatement of his law license, that he submit trust account bank statements and ledger sheets every thirty days during this one-year period, and that he pay all costs of the proceeding. Accordingly, we reverse the trial court's judgment to the extent that it modifies the sanctions imposed by the hearing panel.

**Tenn. Sup. Ct. R. 9 § 1.3 Direct Appeal; Judgment of the Chancery Court Affirmed in Part and Reversed in Part**

SHARON G. LEE, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined.

Randall J. Spivey, Nashville, Tennessee, for the appellant, Board of Professional Responsibility.

Robert L. Green, Memphis, Tennessee, for the appellee, James T. Allison.

**OPINION**

**Factual and Procedural Background**

James T. Allison has been licensed to practice law in Tennessee since 1963 and, at the time of the matters described herein, was engaged in a solo practice, sharing office space with another attorney in Memphis. The present appeal involves two petitions for discipline filed by the Board of Professional Responsibility ("the Board") against Allison.

This case began on April 21, 2003, when Allison self-reported to the Board that a check he wrote to the Internal Revenue Service on his trust account at Regions Bank had been returned for insufficient funds. Subsequent investigation by the Board revealed that Allison had written several checks on the trust account in payment of various personal obligations.

On September 22, 2003, the Board filed a petition for discipline (docket number 2003-1394-9-SG), charging Allison with violation of Tennessee Supreme Court Rule 8, RPC 1.15(a)[1] and RPC 8.4(d),[2] and alleging that he wrote a check to the Internal Revenue Service that was returned for insufficient funds, paid personal bills from his trust account, and commingled personal funds with trust account funds. A supplemental petition for discipline added allegations that there had been an additional overdraft on the trust account for a check to a court reporter and that a check had been written on the trust account payable to cash and designated "into JTA checking" with no client or case reference reflected.

Nearly three years later, on March 27, 2006, the Board filed a second petition for discipline (docket number 2006-1585-9-SG), charging Allison with violation of Tennessee Supreme Court Rule 8, RPC 1.3,[3] 1.4,[4] 1.5,[5] 1.16,[6] 8.1,[7] and 8.4,[8] in his representation of client Ricky Aaron. This

---

[1] Tenn. Sup. Ct. R 8., RPC 1.15. Safekeeping Property

    (a) A lawyer shall hold property and funds of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property and funds. A lawyer in possession of clients' or third persons' property and funds incidental to representation shall hold said property and funds separate from the lawyer's own property and funds.

[2] Tenn. Sup. Ct. R. 8, RPC 8.4, provides that "[i]t is professional misconduct for a lawyer to . . . (d) engage in conduct that is prejudicial to the administration of justice."

[3] Tenn. Sup. Ct. R. 8, RPC 1.3. Diligence.

    A lawyer shall act with reasonable diligence and promptness in representing a client.

[4] Tenn. Sup. Ct. R. 8, RPC 1.4. Communication.

    (a) A lawyer shall keep a client reasonably informed about the status of a matter and comply

2

petition alleges that Aaron, while incarcerated in the state penitentiary at Tiptonville, Tennessee, paid Allison $1,750 to represent him in a federal civil rights case, but, thereafter, Allison failed to file Aaron's complaint, failed to respond to his telephone calls and letters, failed to keep him informed, and neglected his case. Additionally, this second petition alleges that after filing a complaint on behalf of another client, Dwayne Knight, Allison neglected Knight's case and failed to respond to his request for information and keep him informed. The second petition further alleges that Allison failed to respond to requests for information by the Board's disciplinary counsel. The petition seeks an increased degree of discipline because of Allison's substantial experience in the practice of law, his previous public censure for disciplinary rule violations, and his "pattern of misconduct and multiple offenses."

The two petitions for discipline were heard by the Board's hearing committee panel ("the Panel") on November 27, 2006, and on May 1, 2007, the Panel entered a judgment ordering that Allison be suspended from the practice of law for sixty days, that his trust account be monitored for a period of one year following reinstatement of his law license, that he be required to submit trust account bank statements and ledger sheets every thirty days during this one-year period, and that he pay all costs of the proceeding. The judgment includes the following findings with respect to the violation of the Rules of Professional Conduct under Tennessee Supreme Court Rule 8:

> The Panel finds that in case 2003-1394-9-SG the Respondent commingled personal funds with trust funds, paid personal expenses directly from his trust account, failed to maintain required trust accounting records and by his actions has violated Rule 1.15(a) of the Tennessee Rules of Professional Conduct.
>
> The Panel finds that in case 2006-1585-9-SG (Ricky Aaron) the Respondent failed to communicate with his client and by his actions

with reasonable requests for information within a reasonable time.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[5] Tenn. Sup. Ct. R. 8, RPC 1.5. Fees. As pertinent to this case, section (a) of this Rule provides that "[a] lawyer's fee and charges for expenses shall be reasonable" and sets forth various factors to be considered in that regard.

[6] Tenn. Sup. Ct. R. 8, RPC 1.16. Declining and Terminating Representation. As pertinent to this case, section (d) of this Rule provides that "[u]pon termination of the representation of a client, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, including: . . . (5) promptly refunding any advance payment for fees that have not been earned."

[7] Tenn. Sup. Ct. R. 8, RPC 8.1. Bar Admission and Disciplinary Matters. As pertinent to this case, this Rule provides that "a lawyer . . . in connection with a disciplinary matter, shall not. . . (b) . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority. . . ."

[8] See Appendix 1.

violated Rules 1.3, 1.4, 1.5, 1.15, and 8.4 of the Tennessee Rules of Professional Conduct.

The Panel finds that in case 2006-1585-9-SG (Dwayne Knight) the Board failed to prove that the Respondent violated Rules 1.3, 1.4, 1.5, 1.15, and 8.4 of the Tennessee Rules of Professional Conduct.

The Panel finds that in case 2006-1585-9-SG (Dwayne Knight) the Respondent failed to timely respond to the Board inquiries and by his actions violated Rules 8.1(b) and 8.4 of the Tennessee Rules of Professional Conduct.

Upon Allison's petition for certiorari, a hearing was conducted by the Chancery Court for Shelby County on November 27, 2007. By order entered January 30, 2008, the trial court modified the hearing panel's judgment and ordered that Allison receive a public censure rather than the sanction imposed by the Panel, stating that "the ruling of the Board of Professional Responsibility suspending the Respondent's license for sixty days is too harsh for a lawyer who has practiced as long as he has, although the court acknowledges he violated some of the rules of the Code of Professional Responsibility." Thereafter, the Board filed a direct appeal to this Court pursuant to Tennessee Supreme Court Rule 9, section 1.3.

**Analysis**

The source of authority of the Board of Professional Responsibility and its functions lies in the Supreme Court. Nevin v. Bd. of Prof'l Responsibility, 271 S.W.3d 648, 655 (Tenn. 2008); Brown v. Bd. of Prof'l Responsibility, 29 S.W.3d 445, 449 (Tenn. 2000). Included in our duty to regulate the practice of law in this state is the ultimate disciplinary responsibility for violations of the rules governing the legal profession. See Doe v. Bd. of Prof'l Responsibility, 104 S.W.3d 465, 469-70 (Tenn. 2003). Thus, we review judgments in light of our "inherent power . . . [and] fundamental right to prescribe and administer rules pertaining to the licensing and admission of attorneys." In re Burson, 909 S.W.2d 768, 773 (Tenn. 1995).

Tennessee Supreme Court Rule 9, section 1.3, presents the trial court with guidelines for reviewing a decision of a disciplinary hearing panel. The rule as amended July 1, 2006,[9] now restricts the trial court's review to *the transcript of the evidence before the hearing panel unless "allegations of irregularities in the procedure before the panel are made."* Tenn. Sup. Ct. R. 9, § 1.3 (2007) (emphasis added); see also Bd. of Prof'l Responsibility v. Love, 256 S.W.3d 644, 651 (Tenn. 2008).

After a review of the transcript and any additional necessary evidence, the trial court has

_____

[9] Prior to this amendment, Rule 9, section 1.3 provided that the trial court's review "shall be on the transcript of the evidence before the hearing committee, its finding and judgment and upon *such other proof as either party may desire to introduce.*" Tenn. Sup. Ct. R. 9, § 1.3 (2005) (emphasis added).

4

several options.  The trial court may affirm the decision of the panel, remand the case for further proceedings, or reverse or modify the decision.  A reversal or modification of the panel's decision may be made only if the trial court finds that the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions, or decisions are:  (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in light of the entire record.  Although the trial court may affirm, remand, reverse, or modify a hearing panel decision, the trial court may not substitute its judgment for that of the panel as to the weight of the evidence on questions of fact.  Tenn. Sup. Ct. R. 9, § 1.3.

Our review of a trial court's decision in a disciplinary matter is governed by the same standard applicable to our review of an administrative agency's final decision in a contested case under the Uniform Administrative Procedures Act.  Love, 256 S.W.3d at 653. This standard, as set forth in pertinent part at Tennessee Code Annotated section 4-5-322, provides as follows:

> The court may affirm the decision of the agency or remand the case for further proceedings.  The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 4-5-322 (h)(1)-(5)(A) (2005).  Thus, in a case such as the one now before us, where the grounds for reversal under subsections (1), (2) & (3) are not present, we must uphold the hearing panel's decision "unless the decision was either arbitrary or capricious, 'characterized by an abuse, or clearly unwarranted exercise, of discretion' or lacking in support by substantial and material evidence."  Hughes v. Bd. of Prof'l Responsibility, 259 S.W.3d 631, 641 (Tenn. 2008). This Court has recognized that a decision not supported by substantial and material evidence qualifies as arbitrary and capricious.  In applying the substantial and material evidence test, it is our duty to determine whether the "decision is supported by 'such relevant evidence as a rational mind might accept to support a rational conclusion.' . . .  The evidence will be sufficient if it furnishes a reasonably sound factual basis for the decision being reviewed."  City of Memphis v. Civil Serv. Comm'n of Memphis, 216 S.W.3d 311, 316-17 (Tenn. 2007) (quoting Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n, 876 S.W.2d 106, 111 (Tenn. Ct. App. 1993)).  The "substantial and

material evidence" standard has also been described as requiring "something less than a preponderance of the evidence . . . but more than a scintilla or glimmer." Jones v. Bureau of TennCare, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002) (quoting Gluck v. Civil Serv. Comm'n, 15 S.W.3d 486, 490 (Tenn. Ct. App. 1999)). We are constrained, as is the trial court, from substituting our judgment for that of the hearing panel as to the weight of the evidence on questions of fact. Love, 256 S.W.3d at 653.

In reviewing this case, the trial court failed to adhere to the standard of review provided by Tennessee Supreme Court Rule 9, section 1.3. First, in reviewing the judgment of the Panel, the trial court allowed the admission of evidence that was not before the Panel even though there were no allegations of procedural irregularities. However, since no objection was made, the error was waived and is not an issue in this appeal.

The trial court further erred by modifying Allison's punishment without concluding that the Panel's decision involved any of the five circumstances prerequisite to a modification or reversal. Instead, the trial court's ruling indicates that although Allison did violate some of the Rules of Professional Conduct, the sanctions imposed by the Panel were too severe, and that the Panel's decision should be modified for that reason. First, the trial court's order stated in pertinent part as follows:

> The Respondent committed a technical violation of the Board of Professional Responsibility trust account rules by writing checks for personal expenses. However, his own funds were used, and no client funds were involved and no client lost any money.
>
> That the Respondent has a practice that serves a certain segment of our society in need of his kind of legal services. The Court thinks this speaks well of him.
>
> That the ruling of the Board of Professional Responsibility suspending the Respondent's license for sixty days is too harsh for a lawyer who has practiced as long as he has, although the court acknowledges he violated some of the rules of the Code of Professional Responsibility.

Similarly, the trial court stated as follows in its oral ruling:

> Well, I've had these cases before, and usually they're not too difficult. The boards that choose this case, they do a heck of a good job most of the time. And, they did in this case. This case gives me some problems. No client has lost any money. [Allison]'s been candid with the Court. He didn't offer a reason for what he was doing. But, he didn't offer any excuse either for not handling that trust account

6

right. And, nobody would argue this case. But, doggonit [sic] I can't get it out of my mind that he's just one of these lawyers that's available to a certain segment of our society that I do not feel now they have lawyers. And, that bothers me. It speaks well of him.

I just can't suspend a license in this case. He done [sic] wrong. But, I just cannot, I think the punishment is just too harsh to suspend a lawyer that's been lawyering as long as he has to suspend his license in this case. I think a public reprimand is, it may be a light that [the Board's attorney] says that didn't work the last time. But, Mr. Allison is smart enough to know that his times are running out. I think that is, it may not be sufficient in this case, but I'm going to do it. I just think suspension of his license is just too harsh. That's the judgment of the Court.

It is apparent that the trial court failed to find the presence of any of the five circumstances necessary for modification under Tennessee Supreme Court Rule 9, section 1.3, but rather, impermissibly substituted its own judgment for that of the Panel. We will review each of the Panel's findings in turn.

*The Trust Account*

First, we review the Panel's findings that Allison commingled his personal funds with client funds in his trust account, paid his personal expenses directly from the trust account, and failed to maintain required trust accounting records.

We begin by considering Allison's argument that the trial court's finding that he commingled personal funds with client funds in his trust account was erroneous because "at all relevant times the only money in the trust account belonged solely and entirely to [him]." Describing his banking practices with respect to his trust account, Allison states that when he received case settlement monies, he would write a check on the trust account for the client's share of the settlement and immediately accompany the client to the bank where he and the client would endorse the settlement check and it would be deposited in the trust account. Allison asserts that at that same time, upon his request, the bank would cash the check to the client and "[t]he result was the client's part of the settlement never really got into the trust account because he/she received cash simultaneously with the deposit of the check."

Allison's assertion that the client's part of the check "never really got into the trust account" contradicts his simultaneous assertion that the settlement check was deposited in the trust account. Allison's concession that all of the settlement monies were deposited in the trust account and *then* the bank cashed the check representing the client's portion of the settlement shows that during the period of time between the initial deposit and the moment funds were removed from the account to pay the client's portion of the settlement, the client's funds and Allison's personal funds were

7

commingled. Further, it appears from the following testimony that Allison admitted that he commingled funds belonging to himself with client funds:

> Q. Mr. Allison, you testified that you did not commingle funds in your trust account; is that correct?
>
> A. I don't think that I said I did not. I said to my knowledge I never knowingly did it.
>
> Q. But didn't you knowingly make client deposits into that account?
>
> A. I'm sorry. What do you mean?
>
> Q. Didn't you make client deposits into that trust account while your money was also in that account?
>
> A. Yes.

It is our determination that the Panel's finding that Allison commingled personal funds with client funds was supported by substantial and material evidence. Allison's commingling of personal funds with client funds in his trust account was a violation of Tennessee Supreme Court Rule 8, RPC 1.15(a), which requires a lawyer to hold the property and funds of clients separate from the lawyer's own property and funds.

Next, Allison does not deny, and his testimony before the Panel confirmed, that on many occasions, he paid personal expenses from funds held in his trust account. During the time Allison was paying these personal expenses, the only funds the account contained represented attorney's fees belonging solely to Allison, and there is no proof that, in paying such personal expenses, Allison misappropriated any client funds or engaged in any acts of dishonesty, fraud, deceit, or misrepresentation. Nevertheless, Allison's use of his trust account to pay personal expenses clearly constituted a violation of Tennessee Supreme Court Rule 8, RPC 1.15(a)(1), which, in pertinent part, states that "[a] lawyer may deposit the lawyer's own funds in [the trust account] for the sole purpose of paying bank service charges on that account, but only in an amount reasonably necessary for that purpose." This Rule effectively prohibits an attorney from depositing his or her own monies in the trust account in order to use the account as a personal checking account as was done by Allison.

As to the Panel's finding that Allison failed to maintain required trust accounting records, Allison admitted that during 2003, and for a portion of 2004, he did not maintain a trust account receipt book, trust account disbursement records, or client ledger sheets and failed to reconcile his trust account bank statements. Requirements related to the maintenance of trust account records are addressed by Tennessee Supreme Court Rule 9, section 29(A)(2), as follows:

> Every lawyer engaged in the practice of law in Tennessee shall

> maintain . . . the records of the [trust] accounts, including checkbooks, canceled checks, check stubs, vouchers, ledgers, journals, closing statements, accounting or other statements of disbursements rendered to clients or other parties with regard to trust funds or similar equivalent records clearly and expressly reflecting the date, amount, source and explanation for all receipts, withdrawals, deliveries and disbursements of the funds or other property of a client.

The Panel's finding that Allison failed to maintain required trust account records was supported by substantial and material evidence, and this conduct violated Tennessee Supreme Court Rule 9, section 29(A)(2).

*Communication with Client*

Next, we address the question of whether the Panel's finding that Allison failed to communicate with a client was supported by adequate evidence. As noted above, Tennessee Supreme Court Rule 8, RPC 1.4, specifically addresses the lawyer's duty to communicate with his or her client, and requires that the lawyer "keep a client reasonably informed about the status of a matter and comply with reasonable requests for information within a reasonable time" and "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Tenn. Sup. Ct. R. 8, RPC 1.4. Our review of the record before the Panel does not reveal substantial and material evidence that Allison failed to meet either of these requirements.

It is unclear from the Panel's judgment exactly what evidence the Panel relied upon in finding that Allison failed to communicate with Aaron. The Board contends that this finding was supported by Allison's admission that, in a letter to Board employee Beverly Sharpe dated June 22, 2005, he stated, inter alia, as follows:

> I should not have taken a case that far from Memphis[10] at a time I was stretched so thin. I received $1,750.00 and spent 280, leaving $1,470. I read the cases that Mr. Aaron researched and we discussed his case thoroughly. An estimation of the time I spent on Mr. Aaron's case is ten hours. I apologized to him and his family for not following through with it. If so much had not been going on in my life during this time I probably would have given him better representation.

At most, this language amounts to an admission by Allison that he would have better represented Aaron under different circumstances. While Allison's statement that he apologized to Aaron and his family "for not following through with it" may indicate Allison's assessment that his service to Aaron was deficient in some sense, this statement does not constitute an admission by

---

[10] The one-way driving distance between Memphis and Tiptonville is approximately 125 miles.

Allison that he failed to adequately communicate with Aaron and a construction to that effect is contraindicated by the preceding sentence wherein Allison states that he "read the cases that Mr. Aaron researched and we discussed his case thoroughly." The only other evidence before the Panel that the Board references in support of the Panel's finding of failure to communicate is Allison's testimony that he failed to file suit on Aaron's behalf and failed to visit Aaron in the penitentiary. However, neither of these admissions is sufficient to support the Panel's finding of a failure to communicate.

As to Allison's failure to file suit on behalf of Aaron, we note unrefuted evidence in the record indicating that Aaron was an unusually precocious client and that he engaged in extensive legal research relative to his case and voluntarily filed pleadings himself. In any event, the failure to file suit on behalf of a client does not of itself constitute a failure to communicate. As to Allison's failure to visit Aaron in prison, Allison was not required to meet with Aaron in person in order to satisfy his obligations under Tennessee Supreme Court Rule 8, RPC 1.4, and Allison testified without dispute that through prior arrangement with penitentiary officials, he and Aaron had lengthy telephone discussions and discussed his case thoroughly.

In short, none of the Panel's findings as recounted above warrants the conclusion that Allison failed to communicate with Aaron in violation of Tennessee Supreme Court Rule 8, RPC 1.4.

*Timely Response to Board Inquiries*

Next, we address the Panel's finding that Allison failed to timely respond to Board inquiries concerning his representation of Dwayne Knight and thereby violated Tennessee Supreme Court Rule 8, RPC 8.1(b).

The proof before the Panel included three letters to Allison from Board disciplinary counsel Sandy Garrett. The first of these letters, dated October 31, 2005, requested that Allison provide "information regarding Mr. Trey Jordan's involvement with Mr. Knight's case." The second letter, dated November 17, 2005, reminded Allison that he had not responded to the letter of October 31, 2005, requested a written response within ten days, and stated that "your continued failure to respond will be viewed by this office as a violation of the Tennessee Rules of Professional Conduct." The third letter, dated December 1, 2005, reminded Allison that he had still not responded to the information requests set forth in the preceding letters of October 31, 2005 and November 17, 2005 and, inter alia, that his continued failure to respond "will be deemed to constitute additional violations of your professional responsibility."

We find that these letters constitute relevant evidence from which the Panel could have rationally concluded that Allison failed to timely respond to Board inquires between October 31, 2005 and December 1, 2005 and thereby violated Tennessee Supreme Court Rule 8, RPC 8.1(b). The Panel's finding that Allison violated Rule 8, RPC 8.1(b) was supported by substantial and material evidence.

*Sanctions*

Finally, we address the propriety of the sanctions that the Panel imposed in this matter. The Panel ordered a sixty-day suspension from the practice of law for Allison. Furthermore, the Panel ordered that Allison's trust account be monitored for a period of one year following the reinstatement of his law license, that he be required to submit trust account bank statements and ledger sheets every thirty days during this one-year period, and that he pay all costs of the proceeding. The trial court felt these sanctions to be excessively harsh and held that Allison should receive a public censure instead.

In deciding an appropriate sanction when an attorney is found to have breached the rules governing his or her profession, we are required to review all of the circumstances of the particular case and also, for the sake of uniformity, sanctions imposed in other cases presenting similar circumstances. Bd. of Prof'l Responsibility v. Maddux, 148 S.W.3d 37, 40 (Tenn. 2004). We are also guided in our decision by the American Bar Association's Standards for Imposing Lawyer Sanctions, which have been adopted by the Board for disciplinary matters. See id.

We begin by noting that the sanctions imposed by the Panel were based upon its findings that Allison violated the Rules of Professional Conduct by commingling personal funds with funds in his trust account, paying personal expenses from funds in his trust account, failing to maintain required trust account records, failing to timely respond to Board inquiries, and failing to communicate with a client. Other than the finding that Allison failed to communicate with a client, all of these findings were supported by substantial and material evidence. As to mitigating factors, we acknowledge that evidence was presented showing that Allison is an attorney of good reputation, and it was not proven that his conduct had a selfish or dishonest motive. However, in addition to these factors in Allison's favor, we are also compelled to note certain aggravating factors in this case. Allison has substantial experience in the practice of law and his violations are characterized by multiple offenses and display a pattern of conduct. Most disturbing is the fact that in 1998 Allison was found guilty of, and publicly reprimanded for, the same violations with which he is now charged, commingling his personal funds with funds in his trust account and paying personal expenses from that account as Allison admitted in the following testimony:

> Q. Mr. Allison, isn't it true that in 1998 you were publicly censured
> by the Supreme Court after a hearing panel found in their judgment[11]
> that you had overdrawn your trust account, commingled personal and
> operating funds and paid personal and operating expenses from your

---

[11] It is clear from the record before this Court that both the hearing panel's December 18, 1997 judgment imposing public censure and the document entered by the Board on March 13, 1998, announcing the public censure and incorporating the judgment of December 18 were entered as Exhibit 13 at the November 27, 2006 Panel hearing. However, the December 18, 1997 judgment was erroneously omitted from the record provided to this Court and is not included in Exhibit 13.

trust account?

A. Yes.

Although Allison insists, in accordance with the judgment of the trial court, that public censure is the appropriate sanction under the circumstances of this case, we do not agree, and it is our conclusion that the proof supports the sanctions imposed by the Panel, including the sixty-day suspension of Allison's license. Although no Tennessee case has addressed the question of whether suspension is an appropriate sanction for the specific combination of violations that were found in this case, the American Bar Association's Standards for Imposing Sanctions provides at Section 4.12 that "[s]upension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to the client" and further provides at Section 8.2 that "[s]uspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession."

In light of the evidence supporting the Panel's findings of Rule violations as discussed herein, and the fact that some of these are violations for which Allison has previously been reprimanded, the sanctions imposed by the Panel are appropriate. Accordingly, to the extent that it modifies the sanctions imposed by the Panel, the judgment of the trial court is reversed.

### Conclusion

For the reasons stated herein and in accordance with the controlling standard of review which requires that a hearing panel's decision must be upheld if supported by substantial and material evidence, we affirm the judgment of the trial court to the extent that it holds that Allison violated the Rules of Professional Conduct. The record supports findings that Allison commingled his personal funds with client funds in his lawyer trust account, paid personal expenses out of his trust account, failed to maintain proper records on his lawyer trust account, and failed to timely respond to Board inquiries. The judgment of the trial court is reversed to the extent that it modifies the sanctions imposed by the Panel. Costs of appeal to this Court are taxed to James T. Allison, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE

<u>Appendix 1</u>

Tenn. Sup. Ct. R. 8, RPC 8.4.  Misconduct.

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) attempt to, or state or imply an ability to influence a tribunal or a governmental agency or official on grounds unrelated to the merits of, or the procedures governing, the matter under consideration;

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law; or

(g) knowingly fail to comply with a final court order entered in a proceeding in which the lawyer is a party, unless the lawyer is unable to comply with the order or is seeking in good faith to determine the validity, scope, meaning, or application of the law upon which the order is based.

13

Rule 9 of the American Bar Association's Standards for Imposing Lawyer Sanctions provides in part as follows:

9.0 AGGRAVATION AND MITIGATION

9.1 Generally

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2 Aggravation

9.21 Definition. Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

9.22 Factors which may be considered in aggravation.

Aggravating factors include:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution

(k) illegal conduct, including that involving the use of controlled substances.

9.3 Mitigation

9.31 Definition. Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32 Factors which may be considered in mitigation.

Mitigating factors include:

(a) absence of a prior disciplinary record;

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:

> (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
> (2) the chemical dependency or mental disability caused the misconduct;
> (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
> (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely;

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse;

(m) remoteness of prior offenses.